UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 8-CR-93-JAW |
| | ) | |
| ARTHUR W. COLE, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDED DECISION**

Arthur W. Cole is charged in a one-count indictment with possession of a computer and other material that contained images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Cole maintains that the computer was unlawfully searched and then seized from his home in Corinth, Maine, on September 20, 2006, and all evidence obtained as a result of that seizure must be excluded from evidence at his trial. The Government maintains there was no Fourth Amendment violation because it obtained consent from a third party who had actual or apparent authority to consent to both the search and seizure of the computer. I held a hearing on Cole's motion to suppress on July 23, 2008. I now recommend the court adopt the following proposed findings of fact and deny the motion to suppress.

**Proposed Findings of Fact**

Elliott Presby and Arthur W. Cole lived together as life partners at a residence on the Covered Bridge Road in Corinth, Maine, for approximately seven years, commencing in 2000. Presby and Cole shared expenses with each man paying his half of the household expenses such as the monthly telephone/Internet bill. Presby had a Gateway computer that he brought with him when they began to live together. He and Cole shared access to the Gateway computer and were

aware of each other's passwords.  The Gateway computer began to experience problems and was no longer operating satisfactorily by early in 2006.

Presby undertook to obtain a new computer for the household.  He ultimately determined that he would purchase a Hewlett Packard model and he went to a computer refurbishing company and bought the machine.  The purchase price was over $ 800.00 and Presby bought the computer on credit and began making payments sometime in the Spring of 2006.  Cole apparently made one $150.00 payment toward the computer in March of 2007, months after the computer had been seized by the Government.  Cole purchased two recliners in December of 2006 and he maintains that both he and Presby understood that Cole's purchase of the recliners was in lieu of him sharing in the expense of purchasing the computer.

In any event, Presby viewed the computer as his property.  He was the one who selected the model to purchase, brought it home, set it up, made the monthly payments for the most part, and attended to problems that arose with software malfunctions.  The computer was placed in an upstairs den shared by Cole and Presby.  There were two desks in the den and the computer was put on Presby's desk.  When Presby set up the computer, he was the "administrator" of the computer, and he set up separate desktops for himself and for Cole that required a password for access.  When Presby first set up the computer he used the password "leocan" for both himself and Cole because that password represented their two astrological signs.  When a problem arose with the Yahoo instant messenger software on both desktops, Presby accessed Cole's account to uninstall and then reinstall the software to make it function properly.  Additionally, when there was a problem with a security website that was in conflict with the Norton anti-virus software on the machine, it was Presby who accessed both desktops to fix the problem.  In effect, as administrator Presby had access to either desktop user account.

Presby testified that he is not sure if Cole changed the "leocan" password to his desktop, but that he believes, if Cole did, that he used "sage" as his password, a password that Cole had used on the old Gateway computer.

Brian Strout, a Maine State Police detective, and James Herbert, a special agent with the Federal Bureau of Investigation, obtained information that someone at the Covered Bridge Road residence had been communicating by computer with an undercover police detective in Keene, New Hampshire.  As a result of that communication they believed that images of child pornography might be found on a computer located in that household.  They made a visit to the residence to conduct an interview with the residents, an investigatory approach that Agent Herbert colloquially referred to as a "knock and talk."  They found Elliott Presby at home. During their initial exchange, Presby explained that he lived there with Arthur Cole, his life partner, who was at work at the time.  Presby invited the officers in.  The officers inquired of Presby concerning a computer in the household that might be the subject of their investigation. Presby acknowledged that there was a computer in the home, that it was his computer, and that he shared it with Cole.  Presby indicated he would consent to a search of computer.  He was not threatened or forced to consent, but he did so because he thought that was the right thing to do. Presby freely signed a written consent to search form.  Before conducting that search the officers advised Presby to call Cole and tell him to come home immediately.  Presby did so, without explaining the situation to Cole.

Presby and the officers went upstairs to the den, a room to which Presby obviously had access.  The officers observed the computer on the desk and briefly saw a screensaver with a picture of men on it, seemingly engaged in sexual activity.  Presby sat down at the desk and logged into his own desktop user account with his password and then allowed Special Agent

Herbert to peruse the folders and files on the hard drive.  According to Agent Herbert, he did not find any image files associated with Presby's desktop user account.  Agent Herbert then requested that Presby show them Cole's desktop, which Presby immediately did.   In Agent Herbert's words, Presby "logged right in."  Herbert navigated to the My Pictures folder associated with Cole's desktop and, with Strout and Presby watching, observed a couple of "jpeg" image files that appeared to be child pornography.   Presby does not now recall whether he used the password "leocan" or "sage" to access Cole's desktop, but he does know that as of September 20, 2006, he already knew a password from his prior work on the computer that gave him access.  Cole testified that he had designated a third password for his desktop account, which may or may not be true.  Whatever the case, Strout and Herbert confirm Presby's own testimony that he readily accessed Cole's desktop, using a password he knew, without any apparent fumbling about trying to determine the password.  Cole testified under examination by the Assistant United States attorney that he understands that an administrator of a computer can access other user accounts in some situations.  It is conceivable, though no evidence was presented on this point, that Presby was able to access Cole's user account by entering Presby's own administrator's password.  Whatever password he used, he obviously knew it when he sat down to the computer and logged on.

Having found pictures they believed were child pornography, the officers asked Presby for consent to take the computer, which Presby voluntarily gave them.   They then disconnected the computer and carried it downstairs.  Shortly thereafter, Cole arrived home and was confronted with what had transpired and with the officers' findings.  Cole became upset and was clearly distraught and crying over the incident.  He never voiced any objection to the search that Presby had authorized.  Nor did he object to the seizure of the computer.  As a co-user of the

4

computer he was asked to sign and did sign the receipts for the property seized by the officers and taken from the house.

## Discussion

The Government justifies its warrantless search of the computer as a search undertaken pursuant to valid third party consent that was given under either actual or apparent authority.  It is well settled under Fourth Amendment jurisprudence that consent, properly obtained, is one of the specifically established exceptions to the requirement that a search of a residence must be conducted pursuant to a warrant issued on the basis of probable cause.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).   In this case there is no issue as to whether Elliott Presby freely and voluntarily consented to the search of his residence and the computer.  Indeed, he did. The issue is whether Presby had the authority, either actual or apparent, to consent to a search of the portion of the computer's memory storage which has been described as Arthur W. Cole's password protected desktop or user account.  I conclude that he did.

"[T]he search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment."  United States v. Matlock, 415 U.S. 164, 165-66 (1974) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). Voluntary consent can be given by someone other than the defendant to search property in which the defendant has a legitimate expectation of privacy, to the extent that the individual providing consent has authority, or appears to have authority, in common with the defendant, to access or uncover the defendant's private effects.  Id. at 170 ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.").  The rule that one having common authority over property

may consent to a search that overrides an absent[1] defendant's privacy expectations arises from a basic recognition that common use of property affords to all of those who use the property a right to permit inspection by others, so that all who use the property in common assume the risk that another might permit a search by the police outside of their presence.  Id. at 171 n.7. Additionally, even if a person does not in fact have common authority over the property, the police may rely on an expression of consent to search if the facts, viewed objectively, would justify a belief that the person consenting has the authority to permit a search of the property in question.  Illinois v. Rodriguez, 497 U.S. 177, 188 (1990).  However, where the facts are ambiguous as to a person's authority to consent based on shared use of the property in question, officers are expected to make reasonable inquiries to clarify whether authority actually exists. Id.;  see also United States v. Purcell, 526 F.3d 953, 964 (6th Cir. 2008) ("When a situation starts as unambiguous but subsequent discoveries create ambiguity, any apparent authority evaporates.").

In the personal computer context, any limit on the authority of one user of a computer to consent to a search of another user's files is likely to turn on the presence of password protection and/or encryption of files.  Password protected computers or files have been likened to private, locked compartments, so that where officers know that the person offering consent lacks the key, or password, they cannot reasonably conclude that the person in question has the authority to consent to a search of any "locked" areas.  See, e.g., United States v. Andrus, 483 F.3d 711, 713- 14, 718-19 (10th Cir. 2007) (considering whether defendant's father had authority to consent to a search of a computer, where the agents conducted a forensic search of the hard drive that

---

[1]    See Georgia v. Randolph, 547 U.S. 103 (2006) (addressing the ability of a defendant who is present to override consent to search given by another having common authority in the property or premises).

6

overrode any password restriction on user access).  Password protection is a factor in this case, but it does not weigh in favor of a finding that Presby, as someone with unfettered access to all files on the computer, did not have actual authority to consent to the search in question.  Nor did the mere existence of password protection give rise to ambiguity as to whether Presby had authority to consent to a search of Cole's files, where Presby was able to promptly enter the password to enable access to the files in question.

### A.  Actual Authority

It is undisputed that Presby selected the computer, purchased it on his credit, set up the user accounts, and was the primary administrator with respect to the computer.  He was the individual responsible for "fixing" things when there were software or security problems and he had ready access to Cole's desktop user account, notwithstanding the password protection that may have restricted access to Cole's account by someone other than Presby or Cole.  On these facts, the only reasonable conclusion is that Presby had the actual authority to access Cole's desktop user account.  From there, the question is whether he had authority to consent to a perusal of the image files stored in the folders associated with Cole's online account.  The facts in this particular case demonstrate that there was a "what's mine is yours" ethos between the two men with respect to their living arrangements that extended to the computer in question. Pointedly, there was no suggestion by either Presby or Cole that Presby would have considered himself to be transgressing Cole's trust by viewing image files located in one of Cole's folders. Nor was there any suggestion by Cole, in his testimony, that he regarded those image files as private with respect to Presby.  Given Presby's actual ownership of the computer and his unrestricted access to the computer and to the non-password-protected image files that gave rise to the seizure, the logical inference is that he had actual authority to consent to a search for such

7

images on the computer.  Accordingly, I recommend that the Court deny the motion to suppress based on Presby's actual authority to consent to both the search and the seizure and based on the fact that Presby did, in fact, voluntarily consent to the search and seizure of the computer.[2]

## B.  Apparent Authority

In his testimony, Cole focused on the fact that he, too, had administrative privileges on the computer and could freely download and install software through his user account.  Cole also testified that he participated in setting up the computer following its purchase and that there was an understanding that he had an equal right to use the computer, based in part on his financial contributions to the household.  This evidence simply demonstrates shared use.  It does nothing to restrict Presby's authority over the computer or his authority to access Cole's files.  If anything, it simply demonstrates that Cole may have had authority equal to Presby's.  Additionally, none of these facts were known to Special Agent Herbert or Detective Strout when they conducted their knock and talk, so even if it does have some tendency to call into question Presby's authority, there was nothing apparent to the officers that would have required them to make any further inquiries as to Presby's authority to permit the search.  To the contrary, they understood from Presby's representations that Presby was the owner of the computer and they observed him accessing Cole's desktop user account without any difficulty.

Finally, Cole testified that he inserted a different password for his desktop user account than the two that were known to Presby.  Like Cole's testimony of shared ownership and shared administrative privileges, this fact was not known to the officers.  The evidence demonstrates

---

[2]        I need not address the voluntariness of Cole's own consent to the *seizure* of the computer.  The evidence reflects that Cole signed the written receipt form associated with the seizure of the computer and never voiced any objection to its removal from the premises.  Nor did Cole voice any objection to the *search* of the computer that had occurred before his arrival at the home.  Cole's conduct did nothing to undermine the objective reasonableness of the officers' prior determination that they had obtained consent from a person with actual authority to grant that consent.

that Presby accessed Cole's desktop user account by means of a password he readily entered. The officers' understanding that Presby owned the computer and their subsequent observation that Presby was able to access Cole's desktop user account without any trouble, were sufficient indicia that Presby was someone with shared access to Cole's user account and to those files associated with it that could be freely perused as a consequence of accessing Cole's user account. Consequently, the record reflects not only Presby's actual authority as owner of the computer to consent to the search and seizure, but also that his authority to access Cole's image files would have been sufficiently apparent to any reasonable officer presented with the circumstances that were presented to Special Agent Herbert and Detective Strout.

## Conclusion

I recommend the court adopt the proposed findings and deny the motion to suppress for the reasons set forth above.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 24, 2008

9